**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MERCDES-BENZ FINANCIAL SERVICES USA LLC, in its capacity as servicer for DAIMLER TRUST AND DAIMLER TITLE CO.,<br><br>Plaintiff,<br>v.<br><br>THE CITY OF PITTSTON and HI-WAY AUTO & TRUCK SERVICE, INC.,<br><br>Defendants. | (Electronically Filed)<br><br>Civil Case No.:<br><br>**COMPLAINT** |

Plaintiff, Mercedes-Benz Financial Services USA, LLC, in its capacity as servicer for plaintiffs, Daimler Trust and Daimler Title Co. ("Plaintiffs" or "Daimler"), as and for its Complaint against Defendants, the City of Pittston (the "Pittston") and Hi-Way Auto & Truck Service, Inc. ("Hi-Way," and with Pittston, "Defendants") alleges:

## NATURE OF ACTION

1. Pittston regularly seizes vehicles as part of its law enforcement activity but has no procedure for disposing of seized vehicles consistent with the basic due process requirements of notice and a hearing. Instead, Pittston employs the outdated and constitutionally unsound practice of summarily turning over control seized vehicles to the private towing company that towed the vehicle when Pittston seized it. In this regard, Pittston's policy is to enlist a towing garage to tow and store vehicles and allow those garages to lien and/or sell the vehicle as a means to cover the costs of towing and storage.

2. Pittston's policy and practice of summarily turning over seized vehicles to private tow companies is a joint enterprise from which Pittston benefits by avoiding the cost of preserving the seized vehicles and by avoiding the cost of having to pay for towing services, because the tow company accepts the vehicle as compensation for the services it renders to Pittston in lieu of money. The tow company benefits by using its control over the vehicle

(created under mantle of authority from Pittston) to profit by selling the vehicle or by conditioning release of the vehicle upon payment of money to the tow company.

3. Here, after seizing a vehicle owned by Daimler Trust and on which Daimler Title holds a lien, Pittston afforded no due process to Daimler and instead summarily disposed of Daimler's interests in that vehicle by giving it to Hi-Way as payment for the services Hi-Way provided to Pittston. Hi-Way accepted the vehicle from Pittston as compensation, asserted an *ex parte* lien for those services, demanded that Daimler satisfy that *ex parte* lien—which Hi-Way insisted took priority over Daimler's interests—before it would relinquish possession to Daimler. At no time was Daimler afforded notice, a hearing, or just compensation for Pittston's taking of Daimler's vehicle.

## JURISDICTION AND VENUE

4. This is a declaratory judgment/civil rights action pursuant to 42 U.S.C. §§ 1983 and 1988 for deprivation of Daimler's rights secured by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, and accordingly jurisdiction is conferred on this Court by 28 U.S.C. §§ 1343(a)(3) and 1343(a)(4), as well as 28 U.S.C. § 1331.

5. The District Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 for interrelated state law claims that arise from the occurrences giving rise to the Federal claims, which have a common nucleus of operative fact.

6. Venue lies in the Court pursuant to 28 U.S.C. § 1391 because the Defendants reside in this district and because a substantial part of the events giving rise to the claim occurred in this district.

## PARTIES

7. Plaintiff Daimler Trust is a business trust organized and existing by virtue of laws of the State of Delaware and the holder of the duly titled and perfected ownership interest in a 2016 Mercedes-Benz vehicle identification number 4JGDA0EB7GA709047 (the "Vehicle").

8. Plaintiff Daimler Title Co. is a corporation organized and existing by virtue of the laws of the State of Delaware and the holder of the duly perfected lien in the Vehicle.

9. Daimler's regular business includes providing leasing and financing for the purchase or lease of Mercedes-Benz manufactured automobiles.

10. Defendant Pittston is a municipal corporation organized and existing under the laws of the Commonwealth of Pennsylvania.

11. Defendant Hi-Way is a corporation organized and existing under the Commonwealth of Pennsylvania.

## FACTS

**Pittston's policy for disposing of seized vehicles**

12. Pittston carries out its essential functions through its own police, who, among other things, seize vehicles for a variety of reasons ranging from alleged criminal infractions to parking violations.

13. Pittston delegates a portion of the performance of its essential functions to Hi-Way. Specifically, Pittston police utilize Hi-Way to tow away, store, and dispose of vehicles seized by the Pittston police acting in the course of their duties as law enforcement officers.

14. Pursuant to this relationship, Pittston exercises governmental authority to seize vehicles.

15. Rather than attempt to return these seized vehicles to the person from whom they are seized, or give them to another person with a pre-existing property interest (like a lessor-owner or lienholder), Pittston instead places seized vehicles in the possession of its tow operators, including Hi-Way, for disposal.

16. Pittston thereby extends the mantle of its authority to its tow operators, like Hi-Way, to ensure that the tow operators have a basis to claim lawful possession of the vehicle (rather than an act of theft as it would be if the tow operators took the vehicle and insisted on payment for its return in the absence of police authority, see 18 Pa.C.S.A. §§ 3921, 3924).

17. Hi-Way (and the other of Pittston's tow operators) accept the seized vehicles from Pittston—which vehicles Pittston does not own—as either partial or total payment for the towing and storage services Hi-Way provides to Pittston.

18. Pittston facilitates Hi-Way's acceptance of seized vehicles by summarily treating vehicles as abandoned, even where they do not meet the definition of abandoned under Pennsylvania law or any meaning of the word "abandoned."

19. Hi-Way (and the other of Pittston's tow operators) then impress an *ex parte* lien for towing and storage fees, which they claim supersedes any other persons' rights in these vehicles.

20. After assessing an *ex parte* lien, Hi-Way (and the other of Pittston's tow operators) refuse to return possession of the vehicles to *any* other person, even those with pre-existing property rights in the seized vehicles, while claiming additional daily storages charges.

21. To effectuate disposal of a vehicle, Hi-Way eventually forecloses its purported lien by taking title to the vehicle—facilitated by Pittston's declaration that a vehicle was

"abandoned," whether or not it was actually abandoned—and then selling it and keeping the proceeds.

22. Pittston benefits from granting the mantle of authority to control vehicles to towing companies as Pittston is thereby relieved of the burden and costs of preserving such vehicles. Without Hi-Way's conduct, Pittston would be forced to store and preserve vehicles following seizure.

23. Pittston benefits from Hi-Way's assertion of an *ex parte* lien on, and eventual sale of, seized vehicles. Without Hi-Way's conduct, Pittston would be forced to pay Hi-Way for the services Hi-Way provides Pittston by using money instead of the vehicles that Pittston seized.

24. It is Pittston's and Hi-Way's regular policy and custom, in the course of the above-described conduct, **not** to obtain a warrant for any of the following actions (for which no valid exception to the warrant requirement exists):

A. The initial seizure of the vehicle;

B. The determination that a vehicle is abandoned;

C. The turnover of possession of the vehicle to Hi-Way;

D. The decision by Pittston and/or Hi-Way to continue to detain the vehicles after the initial reason for the seizure has passed;

E. The decision of Hi-Way to assert an *ex parte* lien; and

F. The eventual change in title/sale of the vehicle.

25. Even if the initial seizure of the vehicles in question were made under a valid exception to the Fourth Amendment's warrant requirement, a (possibly) valid initial warrantless seizure does not justify any action Pittston or Hi-Way decide to take thereafter. Rather, once the reasons for the (possibly valid) initial warrantless seizure have dissipated, Pittston and Hi-Way

are required to return the seized property, obtain a warrant, or obtain a new justification for a warrantless seizure.

26. It is Pittston's and Hi-Way's regular policy and custom, in the course of the above-described conduct, to not provide any form of constitutionally adequate notice, nor any hearing whatsoever, in relation to any of the following actions:

A. The initial seizure of the vehicle;

B. The determination that a vehicle is abandoned;

C. The turnover of possession of the vehicle to Hi-Way;

D. The decision by Pittston and/or Hi-Way to continue to detain the vehicles after the initial reason for the seizure has passed;

E. The decision of Hi-Way to assert an *ex parte* lien; and

F. The eventual change in title/sale of the vehicle.

27. Pittston does not provide just compensation to those with property interests in seized vehicles upon Pittston's taking of those vehicles for Pittston's public purpose, *i.e.*, the turnover of the vehicles to Hi-Way and other tow operators as payment for towing and storage services.

28. These actions, all taken in accordance with Pittston's and Hi-Way's regular policy and custom for seizing and disposing of seized motor vehicles, violate the Fourth, Fifth, and Fourteenth Amendment to the United States Constitution.

29. Pittston regularly disposes of vehicles seized by its police and/or pursuant to its police powers by declaring them "abandoned," which, upon information and belief, is dozens or hundreds of vehicles annually.

30. Pittston's regular treatment of seized vehicles as "abandoned" is, upon information and belief, a part of a written but unpublished policy or procedure of the town's

police department. Alternatively, it is a practice by the Pittston police that is so widespread and permanent so as to constitute a custom or usage with the force of law.

**Pittston seized the Vehicle, in which Daimler held a protectable interest, and gave it to Hi-Way for disposal**

31. On or about September 6, 2016, Daimler Trust became the duly titled owner of the Vehicle, and on or about September 6, 2016, Daimler Title Co. duly perfected its security interest and lien in the Vehicle.

32. On or about April 11, 2020, Hi-Way actively and regularly towed and stored vehicles at the direction of Pittston police officers acting in the regular course of their duties as law enforcement officers, as described above.

33. On or about April 11, 2020, Pittston seized the Vehicle and instructed Hi-Way to tow it away from the roadway and store it at Pittston's direction.

34. Daimler did not, at any time, have physical possession or custody of the Vehicle.

35. Daimler had no involvement with or knowledge of the operation of the Vehicle at the time it was seized by the Pittston Police and/or Hi-Way.

36. Neither Pittston nor Hi-Way took any measure to inform Daimler of the seizure and disposal of the Vehicle.

37. Once the Vehicle was towed by Hi-Way, Pittston had no law enforcement need to detain the vehicle.

38. Upon concluding its need to hold the Vehicle, Pittston did not return the Vehicle to Daimler or anyone else. Instead, Pittston proceeded to dispose of the vehicle by summarily treating it as an abandoned vehicle.

39. Upon information and belief, Pittston did not undertake any proceedings, provided for under Pennsylvania law or otherwise, to adjudicate whether the vehicle had actually been abandoned.

40. Upon information and belief, Pittston did not follow any process provided for under Pennsylvania law for the disposition of abandoned vehicles.

41. The circumstances of Pittston's seizure of the Vehicle did not render the Vehicle "abandoned" under Pennsylvania law or under any meaning of that word.

42. Upon information and belief, Pittston did not undertake any proceedings, provided for under Pennsylvania law or otherwise, to adjudicate whether the vehicle had actually been abandoned.

43. The Vehicle, of course, was not "abandoned," but rather had been taken by the Pittston police from the person in possession, and later intentionally withheld from Daimler.

44. Pittston did not notify Daimler after its need to hold the vehicle ended or that Pittston intended to dispose of the Vehicle.

45. Pittston did not compensate Daimler for the taking of its vehicle which occurred when Pittston declared the vehicle to be abandoned to facilitate Pittston's use of the vehicle to compensate Hi-Way for Hi-Way's services.

46. Pittston did not ensure that its agent, Hi-Way notified Daimler that Pittston had authorized detention and disposal of the Vehicle.

47. Pittston benefited from Hi-Way's detention of the Vehicle to secure payment in that Pittston was freed from the cost and burden of preserving the Vehicle and obtained Hi-Way's services to clear the roadway and store the Vehicle with no payment (or reduced payment) of money from Pittston to Hi-Way.

48. Hi-Way only possessed the Vehicle by virtue of its relationship with Pittston and acted in concert with Pittston to seize, detain and dispose of the Vehicle. Hi-Way had no other right to remove the Vehicle from the roadway and hold it against anyone. Hi-Way was, therefore, required to comply with the Constitution in relation to its seizure, detention, and disposal of the Vehicle.

49. Hi-Way asserted that it was entitled to legal possession of the Vehicle and asserted a lien against the Vehicle for towing and storage fees.

50. Upon discovering Defendants' actions as stated, Daimler demanded that Pittston and Hi-Way release the Vehicle to Daimler but Defendants refused to do so unless Daimler paid Hi-Way an alleged amount owed for towing and storage fees.

51. Hi-Way continues to hold the Vehicle and continues to refuse to return possession of the Vehicle to Daimler.

52. Pittston's disposal of the Vehicle by declaring it abandoned and turning over possession to Hi-Way was consistent with and/or part a Pittston's regular policy, custom and/or practice for disposing of a vehicle that is seized by its police and/or pursuant to its police powers.

**Pittston and Hi-Way's conduct constituted unreasonable seizures of Daimler's property in violation of the Fourth and Fourteenth Amendments**

53. Pittston meaningfully interfered with protectable interests in the Vehicle.

54. In arranging to place the property of another, *i.e.* the Vehicle, into the possession of Hi-Way for purposes of disposing of it, Pittston further meaningfully interfered with protectable interests in the Vehicle.

55. Pittston further interfered with protectable interests in the Vehicle by determining that Vehicle to have been "abandoned."

56. Pittston and Hi-Way interfered with protectable interests in the Vehicle through Hi-Way's continued detention of the Vehicle to secure payment of an alleged lien for towing and storage charges for alleged services Hi-Way rendered to Pittston.

57. In detaining the Vehicle to secure payment of an alleged lien for towing and storage charges for alleged services Hi-Way rendered to Pittston, Hi-Way meaningfully interfered with protectable interests in the Vehicle while acting under color of law.

58. These meaningful interferences with protectable property interests in the Vehicle by both Pittston and Hi-Way constituted seizures of the Vehicle under the Fourth Amendment to the United States Constitution.

59. Defendants' actions constituted multiple distinct seizures of the Vehicle: first, by removing the Vehicle from the roadway; second, by placing it into the possession of Hi-Way; third, by continuing to detain the Vehicle; and fourth, by asserting an *ex parte* lien to secure payment of Hi-Way's alleged towing and storage fees.

60. Defendants were required to have separate justifications for each of the seizures not accompanied by a warrant, or to obtain a warrant.

61. Defendants did not have a warrant or any other court order authorizing any of these distinct seizures.

62. There is no valid exception to the warrant requirement for Pittston's and Hi-Way's conduct for any of these distinct seizures of the Vehicle.

63. In particular, there is no valid exception to the warrant requirement for turning over possession of another person's property (the Vehicle), nor for accepting possession of that property, in lieu of payment for services.

64. There is also no valid exception to the warrant requirement for continuing to detain a person's property (the Vehicle) as collateral to secure payment of an *ex parte* lien.

65. Because none of the seizures were accompanied by any warrant, court order, or valid exception to the warrant requirement, each distinct seizure was unreasonable in violation of the Fourth Amendment to the United States Constitution. Alternatively, if viewed as one, single seizure, the seizure (potentially) valid at its inception nevertheless became unreasonable because its manner of execution unreasonably infringed on Daimler's interests.

**Pittston and Hi-Way's conduct constituted deprivation of Daimler's property without due process of law in violation of the Fourteenth Amendment**

66. Pittston is required to comply with due process requirements and to provide holders of property interests in vehicles, including Daimler, with notice and an opportunity to be heard before any deprivation of an interest in a seized vehicle.

67. Pittston did not secure judicial review of its initial seizure of the Vehicle, neither before nor shortly after the seizure occurred.

68. Pittston did not secure judicial review of its placement of the Vehicle into Hi-Way's possession, neither before nor shortly after the seizure occurred.

69. Neither Pittston nor Hi-Way secured judicial review of Pittston and Hi-Way's continued detention of the Vehicle to secure payment of an alleged *ex parte* lien for towing and storage fees relating to the services Hi-Way performed for Pittston.

70. In delegating its essential governmental function of clearing the roadway to Hi-Way, Pittston does not require Hi-Way to provide procedural safeguards, such as notice and opportunity to be heard, to interested parties prior to imposition of a lien on the towed Vehicle or the continued detention of the Vehicle and accrual of storage charges.

71. Because neither Pittston nor Hi-Way provided any procedure for review of their actions by a neutral decisionmaker, neither provided Daimler with constitutionally adequate notice of those procedures.

72. The manner in which Daimler became aware of Pittston and Hi-Way's seizure of the Vehicle, as well as Hi-Way's continued possession of the Vehicle, did not constitute adequate notice for the purposes of due process.

73. By neither providing constitutionally adequate notice, nor any right to be heard before a neutral decisionmaker regarding any of the aforementioned actions, Pittston and Hi-Way's actions deprived Daimler of its property without due process of law in contravention of the Fourteenth Amendment to the United States Constitution.

74. Pittston and Hi-Way's conduct in using an inapplicable abandoned motor vehicle statute to fund Pittston's seizure of the Vehicle also violated substantive due process.

**Pittston's turnover to Hi-Way of the Vehicle as compensation for the services Hi-Way rendered to Pittston violated the Fifth Amendment's prohibition on taking property without just compensation**

75. Part of Pittston's essential government functions is to seize vehicles through its police for a variety of reasons.

76. Pittston delegated a portion of the performance of that essential function to Hi-Way, who towed, stored, and detained the Vehicle at the request of the Pittston police.

77. Pittston compensated Hi-Way, in whole or in part, by turning over possession of the Vehicle to Hi-Way, who only lawfully possessed the Vehicle by virtue of having obtained it from Pittston.

78. Hi-Way accepted the Vehicle as compensation, in whole or in part, for the services it provided to Pittston, namely, the towing and storage of the Vehicle that Pittston had seized.

79. Pittston facilitated Hi-Way's acceptance of the Vehicle as compensation for its services by summarily treating the Vehicle as "abandoned," even though it did not meet the definition of "abandoned" under Pennsylvania law or any meaning of that word, since it had been seized, not abandoned.

80. Pittston benefited by granting the mantle of its authority to control the Vehicle to Hi-Way by being relieved of the burden and costs of towing and storing the Vehicle, or of compensating Hi-Way for towing and storing the Vehicle.

81. Pittston thereby took Daimler's interests in the Vehicle for public use. By taking Daimler's private property for public use, without compensation to Daimler—indeed, facilitating Hi-Way's attempts to take more of Daimler's property, *i.e.* its money, in exchange for the return of the Vehicle—Pittston and Hi-Way's actions violated the takings clause of the Fifth Amendment to the United States Constitution.

## **CAUSES OF ACTION**

### **COUNT I**
**Violation of Civil Rights Pursuant to title 42 U.S.C. § 1983**
**(Deprivation of Property by Unreasonable Seizure)**
**(Deprivation of Property Without Due Process of Law)**
**(Taking of Property Without Just Compensation)**
**(as against all Defendants)**

82. Daimler realleges and incorporates herein by reference the allegations set forth in the prior paragraphs herein.

83. Daimler is the holder of a protectible property interest in the Vehicle.

84. Defendants acted under color of state law to deprive Daimler of valuable property interests—namely (a) Daimler's ownership interest in the Vehicle; (b) Daimler's money that Hi-Way sought to force Daimler to pay to Hi-Way; and (c) Daimler's right to possession of the Vehicle—by seizing, detaining and disposal of the Vehicle without providing any form of notice or hearing whereat Daimler could protect its interests, and without any compensation to Daimler.

85. Defendants acted under color of law to seize Daimler's property, and such seizure was unreasonable.

86. Defendants acted under color of law to deprive Daimler of its property without due process of law.

87. Defendants acted under color of law to deprive Daimler of its property for public purposes without just compensation to Daimler.

88. Pittston and Hi-Way knew or should have known that their actions violated the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

89. As a direct and proximate result of Pittston and Hi-Way's violation of Daimler's constitutional rights, Daimler has suffered damages based upon the lost value of the Vehicle, loss of use of the Vehicle, the lost income stream due to Daimler relating to the Vehicle, the $10,059.00 wrongfully extracted from Daimler by Defendants, and other damages.

90. Pittston provided a mantle of authority that enhanced the power of Hi-Way and was the moving force that allowed Hi-Way to exercise control over the Vehicle.

91. The conduct taken by Pittston and Hi-Way in relation to the Vehicle were taken in accordance with Pittston's and Hi-Way's standard policy and/or custom for the handling and disposal of seized vehicles.

92. The failure by Pittston and Hi-Way policy makers to properly train or supervise subordinates regarding the process due in conjunction with the seizure, detention, and assertion of charges and liens against vehicles—as made clear by numerous Court decisions confirming well settled rules of law—amounts to deliberate indifference to the rights of persons who have interests in vehicles that are seized, detained, subjected to charges, and liened by Hi-Way after seizure by Pittston.

93. But for Pittston and Hi-Way's deprivational policy, decisions, practices, and failures above described, Daimler would have had the right to recover and would have recovered the Vehicle without delay or with minimal delay by reason of measures that preserve legitimate interests but are less intrusive than continued detention of the vehicle; without incurring liability for or loss due to towing and storage charges impressed *ex parte*; and without incurring liability for or loss due to further storage charges accruing daily and without loss of lien priority to the claim asserted by Hi-Way against the Vehicle.

94. Daimler is, therefore, entitled to relief under 42 U.S.C. § 1983.

**COUNT II**
**Violation of Pennsylvania's Constitution**
**(Deprivation of Property by Unreasonable Seizure, Uncompensated Takings and Without Due Process of Law)**
**(as against all Defendants)**

95. Daimler realleges and incorporates herein by reference to the allegations set forth in the prior paragraphs herein.

96. Pittston and Hi-Way's violations of the Fourth, Fifth, and Fourteenth Amendment to the U.S. Constitution as aforesaid constitute violations under the Pennsylvania State Constitution.

97. This Court may provide equitable remedies, including a permanent injunction, to remedy Pittston and Hi-Way's state constitutional violations.

**COUNT III**
**Declaratory Relief**
**(as against all Defendants)**

98. Daimler realleges and incorporates herein by reference to the allegations set forth in the prior paragraphs herein.

99. Defendants assert that their conduct is constitutional.

100. Daimler contends that Defendants' conduct was unconstitutional.

101. An actual controversy has arisen and now exists between Daimler and Defendants warranting declaratory relief pursuant to 28 U.S.C. 2201.

102. Daimler seeks a declaration that Pittston and Hi-Way's conduct as detailed herein violated Daimler's rights to be free from unreasonable seizures and uncompensated takings without Due Process under the Constitutions of the United States and Pennsylvania.

103. Pittston's and Hi-Way's unconstitutional conduct will continue to harm Daimler, which has liens on substantial numbers of vehicles on the road, and other lienholders, without a declaration as to the unconstitutionality of the customs, policies and practices which led to the unconstitutional handling of the Vehicle.

104. To the extent Pittston and/or Hi-Way rely on any provision of Pennsylvania State law to justify their actions, this Court may also issue a declaration that such provisions of Pennsylvania State law are unconstitutional as applied, if applicable.

**COUNT IV**
**Conversion**
**(As Against Hi-Way only)**

105. Daimler realleges and incorporates herein by reference to the allegations set forth in the prior paragraphs herein.

106. Hi-Way exercised wrongful dominion and control over the Vehicle be refusing to release it to Daimler.

107. Hi-Way had no right to insist Daimler pay it to relinquish control of the Vehicle.

108. Daimler has suffered damages for lost value, loss of use, loss of stream of income related to the Vehicle, depreciation, and other actual damages as a result of Hi-Way's conduct.

109. The actions of Hi-Way in refusing to release the Vehicle unless Daimler complied with Hi-Way's demands, required Daimler to litigate this issue against Pittston, thereby entitling Daimler to recover its attorneys' fees as consequential damages of Hi-Way's actions.

**PRAYERS FOR RELIEF**

WHEREFORE, Daimler requests that this Court:

A. Grant judgment in favor of Daimler and against Defendants on all causes of action;

B. Declare that Defendants violated Daimler's rights under the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution;

C. Declare unconstitutional, in violation of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, Pittston's policy and/or custom of effectuating the governmental purpose of clearing motor vehicles from the roadway by compensating tow operators with the property of others—namely, other persons' motor vehicles—and permanently enjoin such practices;

D. Declare unconstitutional, in violation of the Fourth, Fifth, and Fourteenth Amendments, Pittston's policy and/or custom of placing other person's motor vehicles into the possession of third party tow operators, with no preexisting interest in those vehicles, without just compensation and without providing notice or an opportunity to be heard before a neutral

decision maker regarding the propriety of Pittston's actions in disposing of those vehicles, and permanently enjoin such practices;

E. Permanently enjoin Hi-Way from detaining possession of motor vehicles it obtains as a result of its relationship with government entities, including Pittston, without providing notice and a hearing whereat persons with protectable interests may challenge Hi-Way's actions;

F. Award Daimler actual and nominal damages against all Defendants, jointly and severally;

G. Award Daimler the cost of prosecuting this action together with attorneyss fees pursuant to 42 U.S.C. § 1988;

H. Award compensatory damages, consequential damages, punitive damages, costs, and attorneys' fees against Pittston and in favor of Daimler;

I. Declare any reliance by Defendants on state or local law inconsistent with the within-described constitutional rights, and, therefore, declare that any such state or local law, to the extent determined applicable and only to the extent relied on by Defendants, to be unconstitutional as applied; and

J. Award such other and different relief that the Court, in the exercise of its discretion, deems just and proper.

Dated: December 2, 2020

**Norris McLaughlin, P.A.**

By: *<u>/s/ Rebecca J. Price</u>*
Rebecca J. Price, Esq.
Attorney I.D. No. 206182
T: 610-391-1800
E: rprice@norris-law.com
*Counsel for Daimler Consumer USA, Inc.*